# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

GLORIA JONES,                              )
                                           )
      Plaintiff,                      )
                                           )
v.                                         )    Case No. 1:16-CV-408
                                           )
PARKVIEW HOSPITAL, INC., d/b/a             )
PARKVIEW REGIONAL MEDICAL                  )
CENTER,                                    )
                                           )
      Defendant.                      )

## OPINION AND ORDER

This matter is before the court on the motion for summary judgment filed by Defendant

Parkview Regional Medical Center ("Parkview") on June 15, 2020 (ECF No. 77). In support of

its motion, Parkview filed an appendix that includes its Statement of Material Facts and

supporting documents (ECF No. 77-1), together with a memorandum (ECF No. 78). After

requesting and receiving additional time in which to do so, Ms. Jones filed a brief in opposition

to the motion on August 13, 2020 (ECF No. 83) and attached several documents as exhibits

(ECF No. 83-1). Although briefing was completed when Parkview filed its reply brief on August

26, 2020, Ms. Jones filed another pleading on September 2, 2020, which she titled "Reply

Memorandum in Support of Rebuttal for Plaintiff['s] Motion" (ECF No. 85). While this Court's

Local Rule 56-1 provides only for the filing of a movant's brief, an opposing party's response

brief, and a movant's reply brief, Parkview did not object or move to strike Ms. Jones' additional

"reply brief," and so the Court reviewed and considered it when deciding the motion for

summary judgment. For the reasons explained below, the motion is GRANTED.

## SUMMARY JUDGMENT STANDARD

Federal Rule 56 states that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The Supreme Court has explained that "the burden on the moving party may be discharged by 'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "'If the moving party has properly supported his motion, the burden shifts to the non-moving party to come forward with specific facts showing that there is a genuine issue for trial.'" *Simpson v. Gen. Dynamics Ordnance & Tactical Sys.-Simunition Operations, Inc*., 2019 WL 6912332, at *2 (N.D. Ind. Dec. 19, 2019) (quoting *Spierer v. Rossman*, 798 F.3d 502, 507 (7th Cir. 2015)). Within this context, the Court must construe all facts and reasonable inferences from those facts in the light most favorable to the nonmoving party. *Id*. (citing *Frakes v. Peoria Sch. Dist. No. 150*, 872 F.3d 545, 550 (7th Cir. 2017)). A court's role in deciding a motion for summary judgment "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Heochst Corp*., 24 F.3d 918, 920 (7th Cir. 1994). Summary judgment is not a substitute for a trial on the merits nor is it a vehicle for resolving factual disputes. *Id*. Therefore, after drawing all reasonable inferences from the facts in favor of the non-movant, if genuine doubts remain and a reasonable fact-finder could find for the party opposing the motion, summary judgment is inappropriate. *See Shields Enterprises, Inc. v. First Chicago Corp.*, 975 F.2d 1290, 1294 (7th Cir. 1992); *Wolf v. City of Fitchburg*, 870 F.2d 1327, 1330 (7th Cir. 1989).

If it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish his or her case, summary judgment is not only appropriate, but mandated. *See Celotex*, 477 U.S. at 322; *Ziliak v. AstraZeneca LP*, 324 F.3d 518, 520 (7th Cir. 2003).

"Summary judgment is a critical moment for a non-moving party. It must 'respond to the moving party's properly-supported motion by identifying specific, admissible evidence showing that there is a genuine dispute of material fact for trial.'" *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893-94 (7th Cir. 2018) (quoting *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017)). "Inferences supported only by speculation or conjecture will not suffice." *Id*. (citing *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 721-22 (7th Cir. 2018)). "Neither will the mere scintilla of evidence." *Id*. (citing *Grant*, 870 F.3d at 571).

The Seventh Circuit in recent years has refined the summary judgment standard of review in employment discrimination cases, explaining as follows:

> On top of the normal lattice of summary judgment demands, we must also apply the constructs of employment discrimination law. For years we have tangled with a "rat's nest of surplus tests" in employment discrimination cases–struggling to pigeon hole evidence into the direct or indirect method with various overlaying requirements of "convincing mosaics" and circumstantial or direct evidence. *Ortiz v. Werner Enters., Inc*., 834 F.3d 760, 764-66 (7th Cir. 2016). Our Circuit has now clarified the singular question that matters in a discrimination case:
>
> "[W]hether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." *Ortiz*, 834 F.3d at 765. "Evidence must be considered as a whole, rather than asking whether any particular piece of evidence proves the case by itself. . . . Relevant evidence must be considered and irrelevant evidence disregarded." *Id*.

*Johnson*, 892 F.3d at 893-94.

3

**DISCUSSION**

**I. Background facts and claims.**

Gloria Jones filed this lawsuit against Parkview, her former employer, alleging a host of claims.[1] As Parkview puts it, "Ms. Jones has alleged a litany of claims under every conceivable discrimination statute[.]" Defendant's Memorandum in Support, p. 1. Indeed, Jones asserts in her Second Amended Complaint (ECF No. 22) that Parkview discriminated against her in violation of the Americans with Disabilities Act, the Age Discrimination in Employment Act, the Family Medical Leave Act, Title VII (on the basis of both her race and her sex), and 42 U.S.C. § 1981 (on the basis of her race). Second Amended Complaint, pp. 1-2. Jones' Complaint is loaded with claims but virtually devoid of factual support. Jones' charges of discrimination filed with the EEOC and incorporated by reference into her Complaint also don't add much in the way of specifics. In any event, Jones asserts the following claims:

---

[1] Ms. Jones was represented by counsel when she filed this lawsuit and when she filed her Second Amended Complaint. Her original attorneys, from the law firm of Christopher Myers & Associates, withdrew from the case on May 31, 2018 (*see* ECF No. 43). Jones was then briefly represented by attorney Christopher Wolcott, but he also withdrew from the case on October 18, 2018 (*see* ECF No. 58). Since then, Jones has proceeded *pro se*. Jones twice moved the Court to appoint counsel, but Magistrate Judge Susan Collins, to whom this case is on partial referral, denied the motions. Court Orders (ECF Nos. 65 and 70). Accordingly, the Court is mindful of the well-settled principle that, when interpreting a *pro se* plaintiff's pleadings, district courts have a "special responsibility" to construe such pleadings liberally. *Donald v. Cook County Sheriff's Dep't*, 95 F.3d 548, 555 (7th Cir. 1996). "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). That said, it is also well-established that "[a] district court is not required to wade through improper denials and legal argument in search of a genuinely disputed fact. And a mere disagreement with the movant's asserted facts is inadequate if made without reference to specific supporting material. In short, judges are not like pigs, hunting for truffles buried in briefs." *Caldwell v. Klemz*, 2017 WL 4620693, at *3 (N.D. Ind. Oct. 12, 2017) (quoting *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) (internal quotation marks, brackets, and citations omitted)).

1) that she was "discriminated against and discharged on account of her race and color, in violation of Title VII and [42 U.S.C.] § 1981." Jones contends that "Caucasian employees . . . were treated preferentially and better than herself."

2) that she was "treated differently on account of her sex" and that "similarly-situated males were treated more favorably than her, and that in particular, males who suffered from a disability and/or who used FMLA time off were not discriminated against like Plaintiff[.]"

3) that she was "discriminated against and discharged on account of her utilization of medical leave under the FMLA."

4) that she "suffered from serious health conditions including Sarcoidosis, an autoimmune disease, which affects Plaintiff's eye sight. Plaintiff requested accommodation for her Sarcoidosis, but was denied by Defendant[.]"

5) that she "further suffers from problems with her arm and shoulder relating to diabetes. . . . Plaintiff received restrictions from he doctor and she took FMLA time off. Plaintiff requested accommodations, but Defendant failed to reasonably accommodate Plaintiff and failed to engage in the interactive process required under the ADA."

6) that she was "discriminated against, treated differently and discharged because of her age (born in 1961), and further contends that she was replaced by a substantially younger and less qualified individual, all in violation of the ADEA."

7) that she "experienced a retaliatory discharge prohibited by the FMLA."

Second Amended Complaint, pp. 2-3.

Parkview contends that it is entitled to summary judgment on all of Jones' claims. Parkview argues that:

5

1. Ms. Jones cannot establish an interference claim under the [FMLA] because she took all the FMLA leave to which she was entitled, and was even provided with special leave after exhausting her FMLA leave.

2. Ms. Jones cannot establish an FMLA retaliation claim because she admits Parkview never retaliated against her for using FMLA leave, and because Parkview terminated her for a legitimate, non-discriminatory and non-retaliatory reason.

3. Ms. Jones cannot establish a failure to accommodate claim under the [ADA] because Parkview provided her with reasonable accommodations, and only terminated her when it could not reasonably accommodate her permanent restrictions.

4. Ms. Jones cannot establish an ADA failure to accommodate claim because she did not participate in the interactive process in good faith.

5. Ms. Jones cannot establish a claim of sex, race or age discrimination under Title VII . . . the [ADEA], or 42 U.S.C. § 1981 because she cannot establish a *prima facie* case, because Parkview discharge her for a legitimate, non-discriminatory reason, and because there is no evidence of pretext.

Motion for Summary Judgment, pp. 1-2. Parkview's arguments are supported by the evidence–including Jones' own deposition testimony. Jones' response in opposition to the motion does nothing to advance her cause. Instead, as Parkview states, it consists of "a largely impenetrable mass of allegations and documents that do not address the bases for Parkview's summary judgment motion." Defendant's Reply (ECF No. 84), p. 1.

Jones began working in the Parkview pharmacy department in 2003, working primarily in the pharmacy at Parkview's Randallia Drive location, although she also worked occasionally at the Parkview Regional Medical Center location on the north side of Fort Wayne after it opened in 2011. Ms. Jones worked as a Pharmacy Technician until her termination on March 26, 2016.

In its Statement of Material Facts, Parkview explains that "[t]he pharmacy technician job description requires pharmacy technicians to occasionally work above their shoulders, frequently

6

reach overhead and constantly engage in repetitive arm movement. The job description also requires constant grasping, pushing and pulling. . . . The job description also requires constant lifting and carrying of zero to 39 pounds, and occasional lifting in the forty to fifty pound range." Defendant's Statement of Material Facts (ECF No. 77-1), pp. 5-6. In her deposition, Jones agreed that the job description, including the physical requirements, was accurate. *Id.* (citing Jones Depo., pp. 73-74, 132-33). In 2014, Jones began experiencing problems with her left shoulder, which she "attributes . . . to complications from diabetes." *Id.*, p. 8 (citing Jones Depo., pp. 103, 125). Jones "requested and received FMLA leave for her shoulder on numerous occasions. . . . Sometime[s] the FMLA leave was continuous, and sometimes it was intermittent." *Id.* (citing Jones Depo., p. 107). Jones also testified that she "believes that she was granted the FMLA leave to which she was entitled[,]" "does not believe that Parkview treated her differently or retaliated against her for taking FMLA leave[,]" and "never had any trouble with anyone from Parkview on account of her taking FMLA leave." *Id.*, pp. 8-9 (citing Jones Depo., pp. 107, 110, 112). In addition, Jones does not dispute "that Parkview provided her with eight weeks of special, non-FMLA leave in August, 2015." *Id.*, p. 9 (citing Jones Depo., pp. 111-12).

At about the same time she began using FMLA leave for her left shoulder problem, Jones "also began requesting reasonable accommodations under the ADA for her shoulder condition." *Id.* According to Parkview, however, "Ms. Jones presented Parkview with a series of changing medical restrictions relating to her shoulder[,]" which included "various restrictions contain[ing] lifting limitations, limitations on overhead work, and limitations on repetitive motions." *Id.* Jones' limitations made it difficult or impossible for her to perform many of the tasks required of a pharmacy technician. Chris Jellison, a licensed pharmacist "directly supervised Ms. Jones for

approximately seven months from . . . October, 2013 through May, 2014. After that time, he

indirectly supervised Ms. Jones until her termination from Parkview. . . . Mr. Jellison

participated in and helped make Parkview's decisions with respect to Ms. Jones' various requests

for accommodations, and in the decision to terminate her employment." *Id.*, p. 6. In an affidavit,

Jellison states that he "does not recall any other Parkview pharmacy employee with physical

restrictions as severe as Ms. Jones' restrictions[]" and that her "restrictions went to the very heart

of the pharmacy technician job. The pharmacy technicians function as the 'hands and feet' of the

pharmacists, and Ms. Jones' restrictions often prevented her from doing so." *Id.*, pp. 9-10 (citing

Jellison Affidavit, ¶¶ 8-17). "Pharmacy technicians perform generally the same tasks at PRMC

and at Randallia. However, there is a greater volume of work at PRMC because PRMC is a larger

facility than Randallia. During 2014 through 2016 Parkview generally employed twelve

pharmacy technicians on the day shift at PRMC. The volume of work and division of labor at

PRMC made it easier, more reasonable and safer to try to accommodate Ms. Jones' restrictions at

PRMC. . . . usually there were more tasks available at PRMC within Ms. Jones' medical

restrictions. In addition, there were more pharmacy technicians present who could assist Ms.

Jones, or who could perform tasks that she was unable to perform. Patient safety was less at risk

by accommodating Ms. Jones at PRMC." *Id.*, p. 10. Parkview states that "[i]t was often difficult,

unreasonable and unsafe to try to accommodate Ms. Jones' restrictions at Randallia[]" since

"[t]he day shift at Randallia usually employed only two pharmacy technicians." *Id.* Parkview

insists that "[t]hroughout the period of time when Ms. Jones submitted her various restrictions,

Parkview communicated with her as to what restrictions it could and could not accommodate,

and the reasons behind Parkview's decisions." *Id.*, p. 11 (citing Jellison Aff., ¶¶ 13-16 and

exhibits C, D, E and F attached thereto). "When Parkview could not accommodate Ms. Jones' restrictions at work, Parkview accommodated her by allowing her to take FMLA leave, when she qualified for FMLA leave and had leave time available." *Id*.

Parkview contends that "Ms. Jones attempt[ed] to 'game the system' to force Parkview to allow her to work only at Randallia." *Id*., p. 12. Parkview states that "[i]n August, 2015 Ms. Jones decided to change her accommodation requests[.] . . . First, she submitted documentation from her orthopedic physician removing any restrictions relating to her shoulder and indicating that she can return to work without restrictions. . . . She submitted this documentation even though her shoulder condition had not changed at all." *Id*. Then, she submitted two letters from doctors indicating that she needed accommodation for a vision problem caused by Sarcoidosis, in what Parkview argues was a misguided attempt to force Parkview to employ her only at the Randallia Drive location due to its less stressful environment and better lighting.

Parkview cites to portions of Jones' deposition wherein she admitted to this subterfuge. Jones testified that on August 14, 2015, she asked orthopedic surgeon Dr. John Pritchard, who had imposed Jones' shoulder-related lifting and movement restrictions, to write a letter to Parkview removing those restrictions:

Q. [Dr. Pritchard] wrote a letter–

A. He wrote a letter.

Q. –at your request to Parkview that said you have no restrictions, right?

A. Correct.

Q. Okay. And that wasn't–your shoulder hadn't gotten better at all, had it?

A. No.

Q. Hadn't changed a bit?

A. No.

Q. You were just trying to play the system to get to work where you wanted to work?

A. No, I wasn't.

Q. Well, why–I mean, you had the restriction.

A. I had an attorney.

Q. Yeah.

A. And I listened to my attorney's advice.

Q. Okay.

A. And I found out later it was the wrong thing to do, but I listened to my attorney's advice. I wouldn't expect my attorney to give me some legal advice that, that did not make sense. At the time, I'm stressed out. I don't know. I'm going to help because I'm about to lose my job. So I listened to what my attorney told me to do, and I did it.

*Id.*, pp. 149-152.

After providing Parkview with Dr. Pritchard's letter removing her previous restrictions, Parkview states that "Ms. Jones submitted letters from different doctors indicating that she had sarcoidosis and sarcoid-related uveitis. . . . As a result of these conditions, the letters from the doctors claim that Ms. Jones needed to work at Randallia because of the lighting conditions and alleged slower pace of work. . . . However, Ms. Jones did not really need the sarcoid-related accommodations described by the doctors. . . . She admits that there was no difference in the lighting at PRMC and at Randallia." Defendant's Memorandum, p. 9 (citing Jones Depo., pp. 53-54). While being questioned under oath about two doctors' letters that she provided to

10

Parkview–one from Dr. Jonathan Walker and one from Dr. Harin Chhatiawala–which stated that

she needed certain accommodations due to her Sarcoidosis-related vision problem, Jones testified

as follows:

> Q. Okay. The point of the letter, the reason you had [Dr. Jonathan Walker] write it
> was so you could work at Randallia, right?
>
> A. Oh, yes.
>
> . . .
>
> Q. Okay. Take a look at Exhibit 9. Tell me what that is, please.
>
> A. Oh, this is a letter from Dr. Chhatiawala.
>
> . . .
>
> Q. All right. And, again, the point of Exhibit 9 was so that you could work at
> Randallia only and not have to work at PRMC, right?
>
> A. That's what my attorney suggested.
>
> Q. Okay. And you followed the suggestion, didn't you?
>
> A. I followed her suggestion because she's my attorney.
>
> Q. And was it true or not that you really needed this accommodation for your eyes
> and for your stress to work at Randallia only, rather than PRMC?
>
> A. Not true.
>
> Q. Not true?
>
> A. I could have worked there. I could have worked at . . .
>
> Q. PRMC?
>
> A. . . . PRMC, yeah. Yeah. I took my attorney [sic] advice.
>
> Q. But what you're telling me is that you didn't really need the accommodations
> that were listed in Exhibits 8 and 9 that we just looked at?

11

A. Yeah.

Deposition of Gloria Jones (ECF No. 77-1), pp. 50-52.

Finally on this issue, Parkview notes that "[i]n a somewhat unusual turn of events, during this litigation Ms. Jones submitted two letters to the Court in which she admits that her request for sarcoid-related accommodations was unnecessary, but claims she only made the request at the urging of her attorney." *Id*., pp. 33-36. Parkview points to two letters that Jones wrote to the Court, in which she reiterated that she took her former attorney's advice to change her restrictions and accommodation demands. In one of those letters, Ms. Jones stated the following:

> I obtain Christopher Myers firm in August 2015, before I was terminated by my former employer Parkview Health System. Lori Jansen one of the associate attorneys at that firm represented me with trying to get Parkview pharmacy to accommodate my health condition with my left shoulder for lifting restriction. Lori Jansen convinced me to change my initial physical restriction with my left shoulder to say I needed to be placed in a less stressful work environment [to] accommodate my health issues with sarcoidosis and diabetes. Lori stated she helped another Parkview employee get accommodated by submitting a letter to Parkview asking to be moved to a less stressful work environment because of her health issues. Therefore, I had my family and retinal physicians write these letters and submitted them to management in pharmacy[.] . . . Parkview pharmacy stated they could not accommodate my new restriction for avoiding stressful situations. I called to inform Lori that pharmacy management team denied accommodating those new restriction[s] for a less stressful work environment. I also informed Lori I would be terminated because I did not have any FMLA time left according to Parkview. Lori stated "Gloria you been [sic] wanting to start your daycare business this would be a perfect opportunity for you to start." When Lori convince [sic] me to change my restriction from physical restriction of my left shoulder it also prevented me from getting short term disability which I needed to save my employment[.] . . . Since I was still under my orthopedic physician care, he was able to put me back on my physical restriction September 22, 2015[,] which help me [sic] to received [sic] my short-term disability for 6 months. I trusted Lori Jansen advice [sic] to [change] my original accommodation from physical restriction to less stressful work environment. I was so distraught from Parkview and humiliated I would have listened to anything in fear of losing my job. I was terminated March 25, 2016, once my short-term disability expired.

Plaintiff's Letter to Magistrate Judge Susan Collins (ECF No. 77-1, p. 94).

In sum, Ms. Jones, acting in accordance with her former lawyer's alleged advice,[2] submitted letters from doctors Walker and Chhatiawala stating that she need to work in a less stressful environment with better lighting to accommodate her sarcoidosis. These letters and Jones' request for accommodations for her sarcoidosis, dated August 14, 2015 (Dr. Chhatiawala) and August 18, 2015 (Dr. Walker), came on the heels of the Physician's Release Slip from Dr. Pritchard, also dated August 14, 2015, in which Dr. Pritchard "[r]eleased [Ms. Jones] to work with no restrictions as of: 8/14/2015." Parkview maintains that Ms. Jones "submitted this documentation even though her shoulder condition had not changed at all[,]" and cites the following passage from her deposition:

> Q. Do you know what happened or what caused your restrictions to go away at that time?
>
> A. That is when I obtained Mr. Myers' office to represent me, and this is the time that Lori Jansen convinced me to use my other illness for–which I did have those illnesses–for restrictions. Because she stated that she had gotten someone else that worked at Parkview to accommodate them for the reason she had me to change.

Jones Deposition, pp. 147.

Parkview contends that this evidence demonstrates that Jones, once her FMLA leave was exhausted due to the time she took off work for her shoulder problem, switched tactics by obtaining a release from Dr. Pritchard to return to work with no physical restrictions while simultaneously requesting accommodation for a vision problem. Parkview contends that "[a]fter

---

[2] Parkview states in its memorandum that it "offers no opinion as to who concocted the story. The source or cause of Ms. Jones prevarication is irrelevant for purposes of this motion. On summary judgment, the only relevant fact is that Ms. Jones failed to tell Parkview the truth and failed to engage in good faith." Defendant's Memorandum, p. 9, n. 1.

her attempt to manipulate Parkview failed, Ms. Jones' orthopedic surgeon reissued restrictions relating to her shoulder." Defendant's Memorandum, p. 9 (citing ECF No. 77-1, p. 116) (Dr. Pritchard report dated September 22, 2015, releasing Ms. Jones to work but with return to restrictions of "no overhead lifting with [left] shoulder," lift/carry restrictions with no lifting of more than 25 pounds, "no work above shoulder," and "no repetitive motion").

Parkview also points out that it granted Jones an additional period of unpaid leave, due to her lifting and movement restrictions, even after she had exhausted all of her FMLA leave. Defendant's Answer to Plaintiff's Interrogatory No. 2 (ECF No. 77-1, pp. 41-42) (listing dates Jones was granted FMLA leave); Deposition of Gloria Jones, p. 109 ("Q. You were, in fact, granted a special non-FMLA leave from August 18th, 2015, through October 13, 2015, right? A. I know I was granted a special leave. . . . Q. Okay. Do you know why you were granted a special leave? A. Because I had to use my family medical leave, all of my FMLA up.").

Parkview states that "[o]n or about February 26, 2016[,] Ms. Jones provided Parkview with her final, permanent restrictions relating to her shoulder. These restrictions limited Ms. Jones to no lifting greater than 15 pounds at waist level, and no work above her shoulder." Defendant's Statement of Material Facts, p. 10 (citing Jones Depo., pp. 176-78; Exhibit 49, Ortho Northeast Return to Work form from Dr. Pritchard dated February 26, 2016, reimposing lifting restrictions; Jellison Affidavit, (ECF No. 77-1, p. 24, ¶ 17)). Parkview "reviewed and considered Ms. Jones' permanent restrictions" and . . . "determined that Parkview could not accommodate Ms. Jones in her pharmacy tech position. As before, the restrictions prevented Jones from performing most of the essential functions of the pharmacy technician position." Jellison Affidavit, ¶ 17.

14

Finally, Parkview explains that when Jones was terminated from her pharmacy tech job, "she was told that she could apply for other positions within Parkview that she thought she could perform with her restrictions. . . . At the time of her termination, Ms. Jones understood that in order to apply for a position at Parkview, she had to complete a form and then apply through the talent acquisition team. . . . Ms. Jones does not recall filling out any internal transfer forms for any positions at Parkview. . . . Ms. Jones did not go online and apply for any jobs at Parkview at the time of her termination." Defendant's Statement of Material Facts, pp. 13-14 (citing Jones Depo., pp. 31-33).

## II. Analysis and rulings.

### A. FMLA claims.

To state an FMLA interference claim, Jones must establish that: 1) she was eligible for FMLA protection; 2) Parkview was covered by the FMLA; 3) she was entitled to leave under the FMLA; 4) she provided sufficient notice of her intent to take FMLA leave; and (5) Parkview denied her FMLA benefits to which she was entitled. *Abudayyeh v. Envoy Air, Inc*., 2020 WL 5819868, at *6 (N.D. Ill. Sept. 30, 2020) (citing *Preddie v. Bartholomew Consol. Sch. Corp*., 799 F.3d 806, 816 (7th Cir. 2015)). To state an FMLA retaliation claim, Jones must establish that: 1) she engaged in protected activity; 2) she suffered an adverse employment action; and 3) a causal connection exists between the two. *Id*. (citing *Riley v. City of Kokomo*, 909 F.3d 182, 188 (7th Cir. 2018)).

Based on the facts and evidence summarized above, Parkview moves for summary judgment on Jones' FMLA claims, arguing that Jones was granted all the FMLA leave to which she was entitled, was even granted an additional eight weeks of unpaid leave once her FMLA

15

leave was exhausted, and that Jones' termination was due to her inability to perform the essential functions of her job, not in retaliation for her taking FMLA leave. Crucially, as recounted above, Jones' own deposition testimony confirms Parkview's position. Jones testified under oath to the following facts related to her FMLA leave:

1) she admitted that she had received all the FMLA leave time to which she was entitled;

2) she admitted that she had received an additional "special" period of leave after her FMLA leave was exhausted; and

3) she admitted that no one from Parkview "treated [her] differently or retaliated against [her] for taking FMLA leave[.]"

Jones Depo., pp. 104-112.

Jones' response briefs and documentary evidence do not rescue her FMLA claims. In her initial response brief, she makes only passing reference to her FMLA claims on the last page, stating: "When [I hired] Mr. Myers [I] informed him [I] thought the defendant may not [be] giving [me] all [my] allowed time for FMLA but [I] was not sure. [I] expected Mr. Myers to investigate into if [I] had FMLA time left with Parkview. Mr. Myers filed this discrimination [sic] with no investigation." Plaintiff's Response Brief (ECF No. 83), p. 9. In her supplemental brief, Jones does not mention her FMLA claims at all.[3]

In its reply brief, Parkview states:

Ms. Jones responds to Parkview's FMLA arguments only by insinuating that the FMLA claims in her second amended complaint were included by her former

---

[3] Parkview likely did not object to or move to strike Jones' supplemental brief because it contains no substantive arguments. Instead, Jones simply insists that she has "present[ed] evidence to bring a prima facie case for her discrimination claims and plea with the Court to allow a jury to hear the case." Plaintiff's Reply (ECF No. 85), p. 2.

> attorneys "with no investigation. . . . These insinuations mimic Ms. Jones' earlier
> claims that her former attorneys caused her to misstate her need for ADA
> accommodations[.] . . . And, like her earlier attempt to blame her former
> attorneys, these insinuations do not alter the facts and authorities set forth by
> Parkview. Jones received all the FMLA leave to which she was entitled, without
> any retaliation by Parkview. Parkview is therefore entitled to summary judgment.

Defendant's Reply (ECF No. 84), pp. 1-2.

Parkview is correct. The evidence–including most importantly Jones' own testimony–

supports Parkview's position. Jones admitted in her deposition that she had received all the

FMLA leave to which she was entitled and that she received an additional period of unpaid leave

after she exhausted her FMLA leave. She admitted that no one at Parkview treated her differently

or retaliated against her as a result of her taking FMLA leave. Her FMLA claims, like her other

claims discussed below, are based not on the evidence, but on Jones' subjective belief that

Parkview somehow violated her FMLA rights. Further, she presents no evidence that Parkview's

nondiscriminatory reason for terminating her (i.e., that her permanent restrictions rendered her

unable to perform the essential functions of her job, with or without accommodation) was

pretextual, i.e., that it was a lie intended to disguise retaliatory conduct. Parkview argues that

"[t]he termination decision was unrelated to any FMLA leave taken by Jones, and Ms. Jones

cannot identify any evidence to the contrary." Defendant's Memorandum, p. 3.

For the foregoing reasons, Parkview is entitled to summary judgment on Jones' FMLA

interference and retaliation claims.

### B. ADA claim.

To survive summary judgment on her ADA claim that Parkview failed to accommodate

her, Jones must establish that: 1) she was a qualified individual with a disability; 2) Parkview

was aware of her disability; and 3) Parkview failed to reasonably accommodate her disability. *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 224 (7th Cir. 2105). As Parkview points out, "[t]he third element requires that employer and employee engage in an 'interactive process' in which both parties are responsible for determining what accommodations are needed to allow the employee to perform the essential functions of the job." Defendant's Memorandum, p. 4 (citing *EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 797 (7th Cir. 2005); *Reeves ex rel. Reeves v. Jewel Food Stores, Inc.*, 759 F.3d 698, 701-02 (7th Cir. 2014)). Parkview also notes that "[a]n employer satisfies its duty to reasonably accommodate an employee with a disability when the employer does what is necessary to allow the employee to work in reasonable comfort. . . . Employees are not entitled to the accommodation of their choice, but rather only a reasonable accommodation." *Id.* (citing *Hoppe v. Lewis University*, 692 F.3d 833, 839-40 (7th Cir. 2012); *EEOC v. Sears Roebuck*, 417 F.3d at 802-03; *Rehling v. City of Chicago*, 207 F.3d 1009, 1014 (7th Cir. 2000)).

Parkview insists that it provided Jones with reasonable accommodations for her disabilities and restrictions, "and only terminated her when it could not reasonably accommodate her permanent restrictions." Defendant's Memorandum in Support, p. 3. Based on the facts set forth above, Parkview argues that it did everything it could to accommodate Jones' shoulder problem and the concomitant lifting restrictions, including allowing her to take FMLA leave when she was unable to perform her essential duties. (As Parkview correctly points out, "[w]hen no other accommodation is available, unpaid leave can be a reasonable accommodation." *Id.*, p. 7 (citing 42 U.S.C. § 12111(9); *Severson v. Heartland Woodcraft, Inc.*, 872 F.3d 476 (7th Cir. 2017)).

Parkview also argues that it is entitled to summary judgment because Jones "did not participate in the interactive process in good faith." *Id*. Parkview notes that "[w]hen engaging in the ADA interactive process, both employers and employees are required to do so in good faith. . . . If there is a breakdown in the interactive process, courts must examine the process as a whole to determine whether the evidence requires a finding that one party's bad faith caused the breakdown." *Id*., pp. 7-8 (internal citations omitted). Parkview argues that Jones failed to participate in the interactive process in good faith in two ways: "First (and most seriously) Ms. Jones misstated her need for sarcoidosis-related accommodations to manipulate Parkview into believing that she could work only at Randallia. . . . Ms. Jones' second failure to act in good faith is less dramatic, but equally fatal to her ADA claim. . . . After her attempt to manipulate Parkview failed, Ms. Jones' orthopedic surgeon reissued restrictions relating to her shoulder. . . . Ms. Jones continued to be off work as a result of these restrictions. . . . On or about February 26, 2016, Ms. Jones provided Parkview with her final, permanent restrictions relating to her shoulder. . . . These restrictions limited Ms. Jones to no lifting greater than 15 pounds at waist level, and no work above her shoulder. . . . As it had done before, Parkview reviewed and considered Ms. Jones' permanent restrictions and, based on the reasons set forth above, determined that it could not accommodate Ms. Jones." *Id*., pp. 9-10 (internal citations to record omitted).

Finally, Parkview argues that "[a]t the time of Ms. Jones' termination, Parkview told her to look at other posted positions within Parkview, for which she was qualified, that she thought she could perform with her restrictions. . . . At the time of her termination, Ms. Jones understood that in order to apply for a position at Parkview, she had to complete a form and submit it to the

19

talent acquisition team. . . . Ms. Jones does not recall filling out any internal transfer forms for

any jobs at Parkview at the time of her termination. . . . Instead . . . Ms. Jones decided to pursue

her desire to run her own daycare business." *Id*., p. 10 (citing Jones Depo.).

Once again Jones' responses to Parkview's evidence and arguments do not raise any

genuine issue of material fact. Parkview maintains that "[i]n the final analysis, Ms. Jones points

to no facts showing that the accommodations she was offered were not reasonable. She agreed

that the pharmacy tech job description was accurate, and that her restrictions prevented her from

performing many of the essential functions. . . . She does not controvert the facts and reasoning

Parkview used to make its accommodation decisions." Defendant's Reply, p. 3. Jones response

in opposition to summary judgment amounts to nothing more than an unfounded insistence that

she was somehow deprived of the benefits of the ADA. But the argument and evidence presented

by Parkview shows otherwise, and Jones has failed to raise any genuine dispute as to any

material fact.[4]

_____

[4] Parkview notes that as part of her response in opposition, Jones submitted an affidavit
from former Parkview employee Sara Vevia, who states that she "was a member of the pharmacy
management team from 2006-2013[]" and that "[d]uring that time, I was directly responsible for
the majority of the technicians, including Gloria Jones." Vevia Aff. (ECF No. 83, p. 6). Vevia
then goes on to discuss a Parkview "pharmacist name Kathy Gordon," whom Vevia claims had a
disability. Vevia claims that "[t]he [Parkview] management team discussed that they were going
to try to get her to quit by purposefully scheduling her in places where . . . she couldn't work
there due to her restriction." *Id*. Parkview argues that "Ms. Vevia's statements do not raise any
genuine issues[.] . . . Ms. Vevia left Parkview in 2013. Ms. Jones did not begin asking for
accommodations for her shoulder until late 2014, and was not terminated until [March], 2016. . .
. Therefore, Ms. Vevia could not have participate in any of the decisions surrounding Ms. Jones'
requests for accommodations, and could not possibly have any personal knowledge of how those
decisions were made." Defendant's Reply, p. 2. As to Gordon, Parkview points out that "Ms.
Gordon was allegedly a pharmacist at Parkview, not a pharmacy tech like Ms. Jones. There is no
indication as to when Ms. Gordon may have requested accommodations, or as to how the
situation was ultimately resolved. There is no suggestion as to what Ms. Gordon's restrictions
may have been, or what Parkview did or did not do to accommodate her. Ms. Vevia's statements

### C. Race, sex and age claims.

Under the *McDonnell Douglas* burden-shifting method, Jones can establish a *prima facie* case of race or sex discrimination under Title VII (or race discrimination under ¶ 1981) by presenting evidence that she is a member of a protected class, that she was meeting Parkview's legitimate expectations, that she suffered an adverse employment action, and that similarly situated individuals not in her protected class were treated more favorably. *Preston v. Forge Indus. Staffing, Inc.*, 449 F.Supp.3d 845, 851 (N.D. Ind. 2020) (citing *Farr v. St. Francis Hosp. and Health Ctrs.*, 570 F.3d 829, 833 (7th Cir. 2009)). "If a plaintiff can establish these four elements, the defendant has an opportunity to articulate a legitimate, nondiscriminatory reason for its action. If the defendant does so, the burden shifts back to the plaintiff and he must offer evidence showing that the defendant's excuse is pretextual." *Id.* "This analysis is the same whether a court is analyzing a claim under Title VII or § 1981." *Id.* (citing *Fane v. Locke Reynolds, LLP*, 480 F.3d 534, 538 (7th Cir. 2007)). "At the end of the day, the Court must determine whether a reasonable juror could conclude that Plaintiff would have kept his job if he were a member of a different class, and everything else stayed the same." *Id.* (citing *Ortiz v. Werner Enter., Inc.*, 834 F.3d 760, 763 (7th Cir. 2016).

The standard of review is the same for Jones' claim under the ADEA. In order to survive summary judgment, Jones must show that: 1) she was a member of the protected class; 2) she was meeting Parkview's legitimate expectations; 3) she suffered an adverse employment action;

---

are simply irrelevant for summary judgment purposes." *Id.*, pp. 2-3. The Court agrees. Jones submitted the affidavit in an attempt to show that Parkview discriminated against another employee with a disability–in some undefined way at some unspecified time–and so must have done the same to her. This "evidence" does not create any issue of fact as to Jones' ADA claims.

and 4) similarly situated younger employees were treated more favorably. *Cook v. ArcelorMittal USA LLC*, 2020 WL 4284708, at *4 (N.D. Ind. July 27, 2020) (citing *Widmar v. Sun Chem. Corp.*, 772 F.3d 457, 463 (7th Cir. 2014)). Under the ADEA, Jones "'retains the burden of persuasion to establish that age was the 'but-for' cause of the employer's adverse action[.]'" *Id*. (quoting *Gross v. FVL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009)).

Parkview argues that "[i]n the present case, Ms. Jones has no 'direct' evidence of discrimination by Parkview. . . . Ms. Jones admits that no . . . supervisor at Parkview ever said anything to her that was discriminatory based on her age, race or sex." Defendant's Memorandum, p. 12 (citing to Jones Depo.). Parkview insists that "[w]hat Ms. Jones does have, based on her repeated and voluminous correspondence with the Court, is a mass of unconnected schedules, allegations and suggestions that at certain times, certain employees who were variously younger, male or Caucasian (or some combination thereof) may have worked on different shifts, at different tasks and at different locations than Ms. Jones. . . . However, this mass of innuendo does not constitute evidence sufficient to raise a genuine issue and withstand summary judgment." *Id*.

Parkview is correct that Jones has not presented any evidentiary support for her race, sex or age claims. She testified in her deposition that she could not recall any racially insensitive comments or conduct by any of her supervisors. *See* Jones Depo., pp. 65-69. She presents no evidence whatsoever of any similarly situated male pharmacy technicians who were treated more favorably, and so her sex discrimination claim is wholly unfounded. The only "evidence" Jones submits in support of her race and age claims is her assertion that a younger Caucasian woman, Cassandra Hossinger, was hired into a job that Jones insists she was more qualified for. Jones

22

states that in July of 2013, she told her then-supervisor, Sara Vevia, that she was interested in a job in "Barcoding Inventory Control (BIC), where [I] filled in when the part-time employee was off." Plaintiff's Response, p. 3. Jones contends that Chris Jellison, who was Vevia's supervisor, did not respond to an email in which Jones expressed interest in the BIC position. Then, almost year later, "[o]n May 16, 2014[,] the position was given to Cassandra Hossinger a young Caucasian female." *Id*. Jones states that she trained Hossinger in the new job "[o]n June 30, 2014[]" and complains that "I was qualified enough to train Cassandra for part of the position but not qualified to work [the] position." *Id*.

This alleged adverse employment action cannot be the basis of a Title VII race *or* age claim, since it occurred more than 300 days before Jones filed her charge of discrimination alleging race discrimination. "To bring a Title VII claim, a plaintiff must file an EEOC charge *within 300 days of the conduct underlying the claim*. 42 U.S.C. § 2000e-5(e)(1) (italics added); *see also Chaudhry v. Nucor Steel-Indiana*, 546 F.3d 832, 836 (7th Cir.2008). "Any complaint of conduct that occurred more than 300 days before the relevant EEOC charge is time-barred." *Moore v. Vital Prod., Inc.*, 641 F.3d 253, 256 (7th Cir. 2011) (citing Chaudhry, 546 F.3d at 836-37). *See also*, *Oliver-Pullins v. Associated Material Handling Indus., Inc.*, 2004 WL 2137624, at *8 (S.D. Ind. July 20, 2004) ("Under 42 U.S.C. § 2000e-5(e)(1), Plaintiff was required to file an EEOC charge within 300 days after the allegedly unlawful practice occurred.") (citing *Reese v. Ice Cream Specialties, Inc.*, 347 F.3d 1007, 1009 (7th Cir.2003)).

Under the ADEA, the deadline for filing a charge of age discrimination in Indiana is even shorter–180 days from the adverse action. "The statute of limitations in Indiana for an ADEA charge is 180 days from the alleged discriminatory conduct. *Thomas v. City of Michigan City,*

23

*Indiana*, 672 F.App'x 587, 589 (7th Cir. 2016); *McKee v. Eaglecare, LLC*, 2015 WL 4603206, at

*1 (N.D. Ind. July 30, 2015) (Indiana plaintiffs suing for ADEA violations must file a charge of

discrimination within 180 days of the unlawful employment practice.); *Purcell v. Indiana*

*Univ.-S. Bend*, 2014 WL 4656565, at *3 (N.D. Ind. Sept. 17, 2014) (quoting *McCombs v.*

*Federal Exp. Corp.*, 965 F.Supp.2d 1018, 1022 (N.D. Ind. 2013)) ("'In Indiana, plaintiffs

pursuing a cause of action under the ADEA must file a charge with the EEOC within 180 days

after the alleged unlawful practice occurred.'"). If a charge is not timely filed, "'the employee

may not challenge the [alleged unlawful employment] practice in court.'" *Id*. (quoting Chaudhry,

546 F.3d at 836 (7th Cir. 2008)).

     The incident about which Jones complains occurred "[o]n May 16, 2014[]" when the

barcoding position "was given to . . . a young Caucasian[.]" Jones' first charge of discrimination

was not filed until June 18, 2015 (ECF No 1-1). Accordingly, the claim is time-barred. Likewise,

this incident cannot be the basis for an age claim since it occurred more than 180 days (more than

a year, in fact) before Jones filed her second charge of discrimination on September 17, 2015

(ECF No. 1-2). And, obviously, this incident cannot be the basis for a sex discrimination claim

since Hossinger is female. Jones presents no other evidence to support her allegations of race, sex

or age discrimination.

     Section 1981, on the other hand, affords a more generous four year statute of limitations.

42 U.S.C. § 1981(b), "affords a more generous [four-year] limitations period." *Jones v. Anderson*

*Cmty. Sch. Corp.*,, 2017 WL 4310194, at *3 (S.D. Ind. Sept. 28, 2017) (citing 42 U.S.C. §

1981(b); *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 383 (2004)). But Jones' allegation

that she was discriminated against on the basis of her race when she was not selected for the

barcoding position fails because the position was a full-time position and Jones was a part-time employee. Jones admitted in her deposition that the position she expressed interest in was not available to her once the position came open since she was a part-time employee:

> Q. And this says, "I was told I could not work in this position because I was part time." . . .
>
> A. Yes.
>
> Q. Who told you that?
>
> A. There was an email that came out. I had applied for this position. In the email–the email originally came out as a position for any employee to apply for it, and I applied for it. And there was no answer to that email. And then about six months later, another email came out for this position. And it said full-time employees only. So that means, since I was a part-time employee, I cannot apply for that[.]

Defendant's Statement of Material Facts (ECF No. 77-1), Jones Depo., p. 189. Jones felt that she had been unfairly treated in this situation and concluded that Parkview's decision to hire a Caucasian woman into the barcoding position proves that the decision was racially discriminatory. But subjective beliefs and conclusory allegations are not evidence, and that is all that Jones has. "Inferences supported only by speculation or conjecture [are] not suffic[ient]" to defeat summary judgment. *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893-94 (7th Cir. 2018)  (citing *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 721-22 (7th Cir. 2018)). Accordingly, this allegation cannot form the basis for a § 1981 race claim. That being the only "evidence" that Jones presents to support her race claim, her claim fails and Parkview is entitled to summary judgment.

Finally, Parkview argues that Jones "cannot contest Parkview's legitimate, nondiscriminatory reasons for terminating her. Jones can disagree with Parkview's decision, but

25

her own subjective disagreement is not evidence of pretext by Parkview." Defendant's

Memorandum, p. 13 (citing and quoting *Skiba v. Illinois Central Railroad Co*., 884 F.3d 708,

724 (7th Cir. 2018) ("'The question is not whether the employer's stated reason was inaccurate or

unfair, but whether the employer honestly believed the reasons it has offered to explain the

discharge.'")). Parkview maintains that "Ms. Jones cannot present a *prima facie* case under

*McDonnell Douglas*, and she also cannot contradict Parkview's legitimate, nondiscriminatory

reason for terminating her and assigning her tasks as it did during her employment. There are no

truffles here." *Id*., p. 14. Jones does not contest that her disability–that is, her shoulder

problem–prevented her from performing the essential duties of her job. That is precisely why

Parkview afforded her FMLA leave (and an additional period of unpaid leave). Only when Jones

submitted her final, permanent lifting and movement restrictions, which once again indicated her

inability to perform her job as a pharmacy tech, did Parkview terminate her. Jones presents no

evidence, or even any allegations, that anyone at Parkview made derogatory comments about her

race, sex or age; she presents no evidence that similarly situated white, male or younger

employees were treated more favorably. Finally, even if Jones could establish a *prima facie* case

of discrimination, which for the reasons set forth above the Court has concluded she has not, she

has failed to present any relevant, admissible evidence to establish that Parkview's proffered,

nondiscriminatory reason for terminating her was pretextual.

As stated at the outset, the issue before the Court is "whether the evidence would permit a

reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other

proscribed factor caused the discharge or other adverse employment action." *Johnson v.

Advocate Health*, 892 F.3d at 893-94 (citing *Ortiz*, 834 F.3d at 765). "Evidence must be

considered as a whole, rather than asking whether any particular piece of evidence proves the case by itself. . . . Relevant evidence must be considered and irrelevant evidence disregarded." *Id*. Applying this standard of review to the present case, the Court concludes that no reasonable factfinder could conclude that Jones disability, race, sex or age caused the adverse employment actions to which she alleges she was subjected.

## CONCLUSION

For the reasons explained above, the motion for summary judgment filed by Defendant Parkview Hospital, Inc., d/b/a Parkview Regional Medical Center (ECF No. 77) is GRANTED as to all of Jones' claims.


Date: October 26, 2020.


  /s/   William C. Lee  
William C. Lee, Judge  
U.S. District Court  
Northern District of Indiana

27